UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOP BRAND LLC, SKY CREATIONS, LLC, E STAR LLC, and FLYING STAR LLC, <br><br> Plaintiffs, <br><br> v. <br><br> COZY COMFORT COMPANY LLC, BRIAN SPECIALE, and MICHAEL SPECIALE, <br><br> Defendants. | No. 20 C 1238 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

The parties to this case are competitors. Both market oversized hooded sweatshirts to customers over the Internet, and both hold design patents that (they say) cover these products. Invoking their patent, Defendants prevailed upon Amazon to exclude Plaintiffs from the Amazon marketplace, prompting this lawsuit. Plaintiffs seek a declaratory judgment that their products do not infringe Defendants' design patent, or that the patent is invalid and unenforceable. They also assert claims of false marking, unfair competition and tortious interference with contract and with prospective economic advantage.

Plaintiffs are Top Brand LLC, E Star LLC, Flying Star LLC, and Sky Creations, LLC. The first three Plaintiffs sell oversized hooded sweatshirts through online retailers to customers in Illinois. Plaintiff Sky Creations owns a design patent for a hooded sweatshirt. It licenses the patent to Top Brand and Flying Star, but not to E Star. Defendants Michael and Brian Speciale are the inventors of the design patent invoked in the complaints to Amazon. They reside in Arizona and operate Defendant Cozy Comfort Company LLC (Cozy Comfort), which has its principal place of business in Arizona. Defendants move to dismiss the false marking claim under Federal Rule of Civil Procedure 12(b)(6) and ask the court to transfer the remaining claims to the District of Arizona under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). In the alternative, Defendants ask the court to dismiss the remaining claims for lack of jurisdiction and improper

venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).[1] As explained here, the false marking claim is dismissed without prejudice, and the remaining claims are transferred to the District of Arizona under 28 U.S.C. § 1406(a).

## BACKGROUND

Before reviewing the allegations in detail, the court pauses to note the difference between design patents and utility patents. A design patent protects "any new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171(a). It "must claim an 'ornamental' design, not one 'dictated by function.'" *Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*, 930 F.3d 1314, 1318 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 1298, 206 L. Ed. 2d 377 (2020) (quoting *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013)). "If [a] particular design is essential to the use of the article, it can not be the subject of a design patent." *Auto. Body Parts*, 930 F.3d at 1318 (quoting *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir 1993)); *see also High Point*, 730 F.3d at 1315 ("A design or shape that is entirely functional, without ornamental or decorative aspect, does not meet the statutory criteria of a design patent.") (quoting *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997)). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *Hupp*, 122 F.3d at 1460 (quoting *L.A. Gear*, 988 F.2d at 1123-24).

The following facts are set forth as favorably to Plaintiffs as the First Amended Complaint and the attached exhibits permit. The court references facts from Defendants' affidavit where relevant to issues of personal jurisdiction and venue.

---

[1] Defendants filed a motion seeking the same relief in May 2020 [20]. Plaintiffs then amended their complaint. Defendants agreed to withdraw their May 2020 motion without prejudice to their response to the amended complaint. (*See* Order [29].) The motion now before the court concerns Plaintiffs' First Amended Complaint.

A.     **The Parties' Businesses, Products, and Intellectual Property**

Plaintiffs Top Brand and E Star are California corporations with their principal places of business in Carson, California. (First Am. Compl. ("FAC") [26] ¶¶ 7, 9.) Plaintiff Flying Star is an Illinois corporation with its principal place of business in Elgin, Illinois. (*Id.* ¶ 11.) Top Brand, E Star, and Flying Star produce and sell clothing, including oversized hooded sweatshirts. (*Id.* ¶¶ 8, 10, 12.) They use online retailers such as Amazon.com to sell the clothing to customers in Illinois, including in Chicago. (*Id.* ¶¶ 8, 10, 12, 48.) They do not state whether they sell clothing to customers outside of Illinois. It is unclear whether Top Brand, E Star, and Flying Star are independent businesses, nor have Plaintiffs explained how their economic interests align, apart from the fact that Plaintiffs Top Brand and Flying Star both sell a product called the Tirrinia® Hoodie, and Plaintiffs E Star and Flying Star both sell a product called the Catalonia Wearable Fleece Blanket with Sleeves and Foot Pockets (the "Catalonia"). (*See id.* ¶¶ 49, 77.)

Plaintiff Sky Creations is an Illinois corporation located in Chicago, Illinois. (*Id.* ¶ 13.)[2] It owns all right, title, and interest U.S. Design Patent No. D728,900 (the '900 Patent). (*Id.* ¶ 14.) The '900 Patent claims an ornamental design for a "Hoodie", which the court understands to be a hooded sweatshirt. (*Id.*)[3] Plaintiffs Top Brand and Flying Star are the sole licensees of Sky Creations' intellectual property, including the '900 Patent. (FAC ¶ 16.) E Star is not a licensee, and Plaintiffs do not state what relationship, if any, exists between E Star and Sky Creations. Top Brand and Flying Star sell a "large sweatshirt" called the Tirrinia® Hoodie (*id.* ¶ 49), which is pictured here:

---

[2]     Plaintiffs do not state whether Sky Creations' principal place of business is in Illinois.

[3]     Neither side has provided the '900 Patent to the court. It is available at https://patentimages.storage.googleapis.com/79/20/e1/4af0b437da3cb0/USD728900.pdf (last visited Mar. 23, 2021). The application for the '900 Patent was filed on September 11, 2012, and the patent issued on May 12, 2015. (*See id.*)



(Tirrinia® Hoodie, Ex. C to FAC [26-1] at PageID #:379.) The Tirrinia® Hoodie is available in various colors, shapes, and sizes. (FAC ¶ 50.) As far as the court can tell, Plaintiffs claim that the '900 Patent covers the Tirrinia® Hoodie and all of the variations just mentioned.[4]

Defendants Michael Speciale and Brian Speciale are residents of Arizona. (*Id.* ¶¶ 22-23.) They are the inventors of U.S. Design Patent No. D859,788 (the "'788 Patent"), which claims "the ornamental design for an enlarged over-garment with an elevated marsupial pocket[.]" ('788 Patent, Ex. A to FAC [26-1] at PageID #:263; *see* FAC ¶¶ 28, 53-54.)[5] This is a "front elevation view" of the ornamental design claimed in the '788 Patent:

---

[4] Plaintiffs do not say where the name "Tirrinia" comes from.

[5] The application for the '788 Patent was filed on September 13, 2017, and the patent issued on September 17, 2019. (*See* '788 Patent at 1.)

4

```
```


('788 Patent, fig 1, at PageID #:263, 265.) Thomas Galvani, a patent attorney "who practices and resides in Arizona", helped Michael and Brian Speciale secure the '788 Patent. (July 1, 2020 Decl. of Michael Speciale in Supp. of Defs.' Mot. ("Speciale Decl.") [32] ¶ 4.) "All of the records relating to" the '788 Patent "are located in Arizona." (*Id.*) The examiner of the '788 Patent cited the '900 Patent as a prior art reference. (*See* '788 Patent at PageID #:263; FAC ¶ 15.)

Defendant Cozy Comfort is an Arizona corporation with its principal place of business in Cave Creek, Arizona. (FAC ¶¶ 17-18.) Plaintiffs allege, on information and belief, that Michael and Brian Speciale "individually and/or together manage, direct and control the actions of Cozy Comfort." (FAC ¶ 20.) Michael Speciale is "the co-founder" of Cozy Comfort and is involved in its day-to-day operations. (Speciale Decl. ¶ 1; *see also* FAC ¶ 21.) Defendants state that they are "unaware of any potential Cozy witness that lives in, works in, or is otherwise based in Illinois." (Speciale Decl. ¶ 14.) According to the FAC, no assignment of the '788 Patent has been recorded with the U.S. Patent and Trademark Office. (FAC ¶ 27.) Accordingly, Plaintiffs allege, Michael and Brian Speciale are "presumed to be" the co-owners of all right, title, and interest in the patent. (*Id.* ¶ 28.)

Defendants sell products that they say are covered by the '788 Patent, including a product
5

called "the Comfy". (Speciale Decl. ¶ 20 (stating that the '788 Patent covers Defendants' "Comfy products, including the Original, the Dream (Lite), the Hoodie, and the Original Jr (Kids)"); *see also* FAC ¶ 35 (alleging that the "Comfy" products sold on Cozy Comfort's website are "purportedly covered by the '788 Patent").) Plaintiffs allege that Defendants market and sell their products to customers in Illinois using online retailers, such as Amazon.com; brick-and-mortar stores in the Chicago area, such as Costco and Target; and www.thecomfy.com, which is Defendant Cozy Comfort's website. (FAC ¶¶ 34-36.) The Cozy Comfort website is allegedly an "interactive website" that allows customers to select Illinois "as the shipping destination state" using "a drop-down shipping menu." (*Id.* ¶¶ 37-38.) Defendants state that they operate the website from Arizona. (Speciale Decl. ¶ 5.) Plaintiffs allege, on information and belief, that "in the last two years," Defendants achieved "over 70 million in sales for their products." (FAC ¶ 34.) They further allege on information and belief that "a substantial amount" of those sales were to customers in the Northern District of Illinois. (*Id.*)

**B.   Defendants' Infringement Complaints to Amazon.com**

Plaintiffs allege that in early November 2019, "just prior to the critical holiday retail selling season," Cozy Comfort sent an e-mail to Amazon.com, complaining that 15 products Top Brand was selling—specifically, the Tirrinia® Hoodie in 15 different colors—infringe the '788 Patent. (*Id.* ¶¶ 29, 61, 110; *see* Nov. 13, 2019 Ltr., Ex. D to FAC [26-1] at PageID #:381.) Cozy Comfort allegedly asked Amazon to remove the listings for the accused products to prevent further sales. (FAC ¶ 29.) As discussed in more detail below, Amazon eventually honored that request.

Plaintiffs allege that the "overall appearance" of the Tirrinia® Hoodie is significantly different from the ornamental design claimed in the '788 Patent, and that the Tirrinia® Hoodie therefore does not infringe. (FAC ¶¶ 60, 67.)[6] Pointing to side-by-side images of a Tirrinia®

---

[6]   As noted, Plaintiff Sky Creations holds a design patent for a garment as well. Plaintiffs have not explicitly alleged that the '900 Patent covers the Tirrinia® Hoodie. They merely suggest that it does and suggest, further, that because the '900 Patent is cited as prior art in the '788 Patent, the Tirrinia® Hoodie cannot infringe the '788 Patent. (*See id.* ¶¶ 63-64 (alleging that

6

Hoodie and the ornamental design claimed in the '788 Patent, Plaintiffs allege that the hemline of the Tirrinia® Hoodie tapers outward and is horizontal, whereas the hemline depicted in the '788 Patent tapers inward, is "substantially angled", and " is significantly longer in the back than in the front". (*Id.* ¶¶ 61, 65.) Plaintiffs also allege that the front pocket of the Tirrinia® Hoodie is wider than the pocket depicted in the '788 Patent, and has curved sides exhibiting "a shallow angle" rather than straight sides with "no curves at all" and "a very steep angle". (*Id.* ¶¶ 62-64.) Finally, Plaintiffs allege that the Tirrinia® Hoodie "has an elongated, tear-drop hood opening with smooth sides," whereas the hood depicted in the '788 Patent "has a substantially circular . . . opening with fat, puffy sides." (*Id.* ¶ 66; *see also id.* ¶¶ 70-72 (alleging that an "ordinary observer" would perceive these differences).)

On November 13, 2019, Top Brand's California-based attorneys sent a letter to Cozy Comfort's Arizona-based attorneys regarding Cozy Comfort's communications with Amazon.com. (*Id.* ¶ 59; *see* Nov. 13, 2019 Ltr. at PageID #:381; Speciale Decl. ¶ 12.) Top Brand's attorneys argued that the Tirrinia® Hoodie does not infringe the '788 Patent for the reasons just stated. (*See* FAC ¶¶ 59-60.) Plaintiffs allege that Cozy Comfort has since made additional "erroneous patent infringement accusations" against them. (*Id.* ¶ 76.) They provide only one example: Cozy Comfort allegedly complained to Amazon.com that the Catalonia—sold by E Star and Flying Star—infringes a Cozy Comfort patent. (*Id.* ¶ 77.) Plaintiffs contend the infringement claim is "erroneous" because the Catalonia lacks both a hood and a marsupial pocket. (*See id.* ¶¶ 76-79.)[7] Plaintiffs allege that their attorneys have asked Cozy Comfort to provide a claim chart that

---

the pockets on the Tirrinia® Hoodie look like those claimed in the '900 Patent, and that the pockets claimed in the '788 Patent look different).) Presumably consistency with the '900 Patent would be a powerful defense to a claim of infringement, but Plaintiffs are not directly making such an argument. Nor is it clear that the argument would have merit: the '900 Patent claims a simple, standard-sized garment. The garments at issue in this case are, as noted, noticeably oversized.

[7] Plaintiffs do not specify what patent Defendants accuse the Catalonia of infringing. (*See id.* ¶ 77.) The court assumes it is the '788 Patent because elsewhere in the FAC, Plaintiffs allege that Defendants have accused E Star and Flying Star of infringing the '788 Patent. (*See, e.g.*, *id.* ¶ 56.)

7

identifies how their products allegedly infringe "any patent claim Cozy has asserted to be infringed." (*See id.* ¶ 103.) Cozy Comfort has not complied, Plaintiffs allege, nor has it withdrawn the infringement complaints it submitted to Amazon.com. (*Id.* ¶¶ 30, 104.)

Amazon allegedly e-mailed Top Brand, E Star, and Flying Star to notify them of Cozy Comfort's infringement complaints. (*Id.* ¶ 80.) In the notice e-mails, Amazon allegedly instructed Plaintiffs to work with Cozy Comfort to resolve the complaints. (*Id.* ¶ 83.) Amazon allegedly informed Plaintiffs that "[f]ailure to do so may result in removal of your offers or your Amazon.com selling privileges." (*Id.* ¶ 84.)[8] Amazon ultimately "remov[ed] listings of Top Brand, E Star and Flying Star products from sale on the Amazon.com website." (*Id.* ¶ 58; *see also id.* ¶¶ 196, 203, 209 (alleging that Defendants' infringement complaints to Amazon.com caused Amazon to breach sales contracts with Top Brand, E Star, and Flying Star).) As a result, Plaintiffs allege, "the Amazon sales of accused products by Top Brand, E Star and Flying Star to Illinois customers were stopped." (*Id.* ¶ 98.)[9] Plaintiffs allegedly suffered damages as a result. (*See, e.g.*, FAC ¶¶ 75, 174; *see also id.* ¶ 101 (alleging that "Sky Creations has been damaged due to Cozy Comfort's interference with [its] licensees").) Not only were Plaintiffs unable to sell products, but Top Brand, E Star, and Flying Star also "suffered damage to their seller's ranking on Amazon . . . ." (*Id.* ¶ 180; *see also id.* ¶¶ 185-86 (alleging that if Amazon revokes a seller's privileges, the seller "loses all of its reviews and Amazon site rankings", which it must rebuild from scratch if it regains selling privileges).) In addition to the damages that Plaintiffs themselves

---

[8] Amazon has an internal dispute resolution process. *See generally* https://sellercentral.amazon.com/gp/help/external/U5SQCEKADDAQRLZ (last visited Mar. 23, 2021). Plaintiffs contend the process is deficient in various ways. Whatever the merits of those contentions, they are not relevant to the issues before this court.

[9] Defendants appear to state that they submitted infringement complaints to Amazon.com only about Top Brand and E Star products—not about Flying Star products. (*See* Speciale Decl. ¶¶ 10-11.) Relatedly, Defendants appear to contend that Amazon removed listings only for Top Brand and E Star products. (*Id.* ¶ 11.)

suffered, Plaintiffs allege that Defendants' conduct deprived Illinois consumers "of competition in the market place between the products of Top Brand, E Star and Flying Star and Defendants' products." (*Id.* ¶ 99.)

**C.     Defendants' Alleged False Marking**

Plaintiffs allege that Defendants harmed them not only by making infringement complaints to Amazon.com, but also by engaging in false marking in violation of 35 U.S.C. § 292. In relevant part, Section 292 prohibits marking or advertising an "unpatented article" with "the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public." 35 U.S.C. § 292(a). Specifically, Plaintiffs note that, on the Cozy Comfort website, Defendants describe products they offer as "*The Comfy, The Comfy Lite, The Comfy Hoodie, and The Comfy Kids U.S. Patent Nos. D859788 . . . .*" (FAC ¶¶ 144, 145.)[10] Plaintiffs allege, on information and belief, that Defendants intend for this statement to instill in customers a belief "that each of [the products] is covered by the '788 Patent." (*Id.* ¶ 146; *see also id.* ¶ 161 (alleging that Defendants intend for customers to purchase their products instead of competitors' products based on their belief that Defendants' products are patented).) According to Plaintiffs, however, "[o]ne or more of [the products]" lack "the ornamental design that is within the scope of the single claim of the '788 Patent." (*Id.* ¶ 148; *see also id.* ¶¶ 149-52 (alleging that the shape of the hood, the shape of the arms, the shape and placement of the pocket, and the "overall combined appearance of features" of one or more of the products differs from the ornamental design claimed in the '788 Patent).)

Defendants Michael and Brian Speciale are aware, Plaintiffs allege, of the scope of the '788 Patent and know that it does not cover "one or more" of the Comfy, the Comfy Lite, the Comfy Hoodie, and the Comfy Kids. (*See id.* ¶¶ 156-62.) In support, Plaintiffs allege that, as the

---

[10]     The ellipses at the end of this sentence appear in the FAC, so the court does not know what Plaintiffs omitted.

9

inventors of the '788 Patent, Michael and Brian Speciale "signed an oath that they reviewed and understand the contents of the application, including the claims."  (*Id.* ¶ 156.)  They also allege that the Speciales prosecuted the patent with assistance from counsel (*id.* ¶ 157) and applied for the patent "for the purpose of marketing and attracting attention."  (*Id.* ¶¶ 158-59.)

According to Plaintiffs, Defendants' allegedly false representation that the '788 Patent covers one or more of their products "has driven customers to purchase Defendants' products" instead of Plaintiffs' products.  (*Id.* ¶ 165.)  Plaintiffs also allege that Defendants' conduct has made Plaintiffs' own products "seem less attractive in the marketplace."  (*Id.* ¶ 166.)  Defendants have allegedly exacerbated the harm by calling Plaintiffs' products "Comfy knockoffs."  (*Id.* ¶ 164.)

## DISCUSSION

### A. False Marking (35 U.S.C. § 292)

Defendants move to dismiss Plaintiffs' false marking claim (Count IV of the FAC) under Federal Rule of Civil Procedure 12(b)(6).  Significantly, Defendants do not challenge the court's personal jurisdiction over them for purposes of this claim and in fact assert that this claim is the sole basis for Plaintiffs' assertion that the court has personal jurisdiction over Defendants.  (*See, e.g.*, Defs.' Mem. in Supp. of Mot. ("Defs.' Br.") [31] at 8 n.1.)  Accordingly, the court concludes that Defendants have consented to personal jurisdiction in this district for purposes of the false marking claim.  The claim arises under federal law, so the court's subject-matter jurisdiction is secure.  *See* 28 U.S.C. § 1331.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case.  *See, e.g.*, *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and draws all permissible inferences in a plaintiff's favor. *See, e.g., Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014). In addition to the allegations set forth in the complaint, the court is also free to consider "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *O'Brien v. Vill. of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020) (internal quotation marks omitted).[11]

In relevant part, 35 U.S.C. § 292 states that "[w]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public . . . . [s]hall be fined not more than $500 for every such offense." 35 U.S.C. § 292(a). It confers a private right of action on "[a] person who has suffered a competitive injury as a result of a violation of this section . . . ." *Id.* § 292(b). To state a claim under Section 292, a plaintiff must allege that (1) the defendant marked an unpatented article, (2) the defendant intended to deceive the public, and (3) the plaintiff suffered a competitive injury as a result. *Id.* §§ 292(a)-(b).

Claims under Section 292 must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *See, e.g., In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309-11 (Fed. Cir.

---

[11] "[R]egional circuit law" applies "to procedural questions that are not themselves substantive patent law issues so long as they do not" (1) relate to patent law, (2) have an "essential relationship to matters" committed by statute to the "exclusive control" of the Federal Circuit, or (3) "clearly implicate the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001).

2011). Under Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "The plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)); *see also Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (a plaintiff asserting a false marking claim must "plead in detail 'the specific who, what, when, where, and how' of the alleged fraud" (quoting *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009)). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," FED. R. CIV. P. 9(b), but a plaintiff asserting a Section 292 claim must "provide some objective indication to reasonably infer that the defendant" acted with intent to deceive. *In re BP Lubricants*, 637 F.3d at 1311.

      Defendants contend that Plaintiffs fail to plead any element of their Section 292 claim with the particularity that Rule 9(b) requires. Defendants' arguments concerning the first element (marking an unpatented article) are by far the most developed, so the court begins there. Defendants contend that to determine whether a design is covered by a design patent (or, instead, is an unpatented article), a court applies the "ordinary observer test" set forth in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). Although the court in *Egyptian Goddess* used the test to address the question of infringement, *see id.*, Plaintiffs do not object to reliance on the test set forth there. In fact, they premise their false marking claim on the theory that an ordinary observer would recognize that "the overall combined appearance of" Defendants' products does not reflect the ornamental design claimed in the '788 Patent. (Pls.' Opp. to Defs.' Mot. ("Pls.' Opp.") [36] at 5.) And another district court recently applied the *Egyptian Goddess* "ordinary observer" test to determine whether a design patent covered an alleged "unpatented article" for purposes of a false marking claim. *ArtSkills, Inc. v. Royal Consumer Prods., LLC,* No. 3:17-CV-1552 (VAB), 2018 WL 3520431, at *4 (D. Conn. July 20, 2018). The court, therefore,

applies the test here.

Under the "ordinary observer" test, infringement is found "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528, 20 L. Ed. 731 (1871)). Here, the question is a different version of that one—whether the '788 Patent covers Defendants' own products—the Comfy, the Comfy Lite, the Comfy Hoodie, and the Comfy Kids—which Defendants allegedly advertised using that patent number. Plaintiffs allege that "one or more" of these products is not covered by the '788 Patent. (FAC ¶ 148.) Specifically, they contend that as compared to the ornamental design claimed in the '788 Patent, "one or more" of Defendants' products has a different hood shape, arm shape, pocket shape, pocket placement, and/or "overall combined appearance." (*Id.* ¶¶ 149-52.) According to Plaintiffs, these differences would be recognized by an ordinary observer. (*See id.* ¶ 153.)

As Defendants emphasize, Plaintiffs' complaint does not support such a claim. To illustrate their allegations, Plaintiffs have furnished side-by-side images for comparison—but oddly they have not contrasted images of Defendants' products with the ornamental design claimed in the '788 Patent to highlight relevant differences. Instead, Plaintiffs have presented images of their own product (the Tirrinia® Hoodie) and have offered a description of how the shapes and appearances of the Tirrinia® Hoodie's features allegedly differ from the features in the claimed design. (*See, e.g.*, FAC ¶¶ 61, 65 (alleging that the Tirrinia® Hoodie does not infringe the '788 Patent because, among other things, its hemline tapers outward and is horizontal).) Plaintiffs' proposed comparison may be relevant to an argument that Plaintiffs are not guilty of infringement; it provides no support at all for any false marking claim. Plaintiffs have done nothing that shows the court specifically how Defendants' own products are inconsistent with the patent specifications. Indeed, Plaintiffs have not even bothered to identify the allegedly falsely-marked

13

products for the court, instead simply listing several products and alleging that Defendants falsely marked "one or more" of them. And although Plaintiffs allege that the hood shape, arm shape, pocket shape, pocket placement, and/or overall appearance of the "one or more" products differ from the ornamental design claimed in the '788 Patent, they do not allege how the shapes or appearances differ. Plaintiffs' allegation that an ordinary observer would notice an unspecified design difference on an unspecified product is not plausible.

Even in response to the motion to dismiss, Plaintiffs have not attempted to cure the deficiency. Rather, they simply assert that "[a]s . . . set forth in the [FAC], the hood, arms, and pocket shape and placement of the Defendants [sic] products do not exhibit the ornamental design of the '788 Patent." (Pls.' Opp. at 5.) But those details are not set forth in the complaint, and Plaintiffs' argument only underscores the conclusory nature of their allegations. The court agrees with Defendants that Plaintiffs have not pleaded the first element of a Section 292 claim— whether Defendants marked an unpatented article—with the specificity Rule 9(b) requires. In other words, Plaintiffs do not plead the "what" or "how" of the alleged fraud. *Simonian v. Blistex, Inc.*, No. 10 CV 01201, 2010 WL 4539450 (N.D. Ill. Nov. 3, 2010), an unreported decision cited by Plaintiffs, does not counsel otherwise. Unlike here, the plaintiff in *Simonian* pleaded the "what" and "how" of the fraud by identifying the product at issue (a specific lip ointment) and alleging that the defendant marked it with "expired patent numbers." *Id.* at *6.

Plaintiffs' allegations regarding deceitful intent are deficient for a similar reason. Again, Plaintiffs do not pinpoint an accused product or describe how its design falls outside the scope of the '788 Patent. In this context, allegations that Defendants understood the scope of the patent do not offer an "objective indication to reasonably infer" that in marking unidentified products as covered by the patent, Defendants acted with the intent to deceive. *In re BP Lubricants*, 637 F.3d at 1311. Nor do allegations that Defendants obtained and used the '788 Patent for marketing purposes fill this gap.

Having concluded that Plaintiffs fail to allege two essential elements of a false marking claim, the court need not reach Defendants' arguments that they also fail to plead a competitive injury. Defendants' motion to dismiss the false marking claim is granted. Plaintiffs have already amended their complaint once, but the court is not prepared to conclude that amendment would be futile. The dismissal is therefore without prejudice to a potential further amendment.

B.  Declaratory Judgment and State-Law Claims / Venue and Jurisdiction Challenge

In addition to asserting a false marking claim, Plaintiffs request a declaratory judgment that they do not infringe the '788 Patent and that the patent is invalid and unenforceable. They also assert tort claims against Defendants under Illinois law—specifically, unfair competition in violation of 815 ILCS 510, tortious interference with contract, and tortious interference with prospective economic advantage. Defendants move to transfer these claims to the District of Arizona under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). In the alternative, they move for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue. For the following reasons, the court concludes that Plaintiffs have not satisfied their burden of proof on the issue of venue. Rather than dismiss Plaintiffs' claims, however, the court transfers them to the District of Arizona under 28 U.S.C. § 1406(a).

Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper. *See, e.g.*, *Grantham v. Challenge-Cook Bros.*, 420 F.2d 1182, 1184 (7th Cir. 1969). Here, the general venue statute, 28 U.S.C. § 1391, governs not only Plaintiffs' state-law claims, but also their claims for declaratory judgment of non-infringement, invalidity, and unenforceability. *See, e.g., VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990), *abrogated on other grounds by TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) ("It has long been held that a declaratory judgment action alleging that a patent is invalid and not infringed—the mirror image of a suit for patent infringement—is governed by the general venue statutes, not by [28 U.S.C.] § 1400(b)."); *Roadie, Inc. v. Baggage Airline Guest Servs., Inc.*, No. CV 17-1079, 2017 WL 11506886, at *3

(D. Del. Nov. 2, 2017). Section 1391(b) provides that "[a] civil action may be brought in" (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action". 28 U.S.C. § 1391(b)(1)-(3). A "natural person" resides "in the judicial district in which that person is domiciled." *Id.* § 1391(c)(1). A corporate defendant resides "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* 1391(c)(2).

In arguing that venue is proper in this district, Plaintiffs make no mention of the first two prongs of § 1391(b), and have not suggested that any Defendant resides here or that relevant events occurred here. Instead, they simply assert that "this Court has jurisdiction over Defendants." (Pls.' Opp. at 12.) Under the venue statute, personal jurisdiction is relevant only if no other district would be an appropriate venue—a test that is not met here. In any case, Plaintiffs have not made a case for the exercise of personal jurisdiction over Defendants here.[12]

As Plaintiffs do not contend that the court has general personal jurisdiction over Defendants, the only question is whether the court properly can exercise specific personal jurisdiction. Federal Circuit law governs that question for both the declaratory judgment and state-law tort claims. *See, e.g., Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) (Federal Circuit law applies "to personal jurisdiction inquiries over out-of-state patentees as declaratory judgment defendants"); *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1137 (Fed. Cir. 2018) (same); *see also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444

---

[12] The court recognizes that by failing to contest personal jurisdiction for purposes of the false marking claim, Defendants may have waived their challenge to the court's exercise of personal jurisdiction—but Plaintiffs do not make that argument.

16

F.3d 1356, 1361 (Fed. Cir. 2006) ("Where a suit involves both patent and non-patent claims, Federal Circuit law regarding due process also applies to the question of personal jurisdiction on non-patent claims if the resolution of the patent infringement issue will be a significant factor in determining liability under the non-patent claims." (internal quotation marks omitted)).

The Federal Circuit's basic framework for analyzing specific jurisdiction is similar to that of the Seventh Circuit. The exercise of personal jurisdiction over Defendants "must comport with [Illinois's] long-arm statute and with due process under the U.S. Constitution." *Maxchief*, 909 F.3d at 1137. Because "the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause," *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010), "the sole question . . . is whether the exercise of jurisdiction would be consistent with due process." *Maxchief*, 909 F.3d at 1137; *see also, e.g.*, *Tamburo*, 601 F.3d at 700. Under the Due Process clause of the Fourteenth Amendment, a defendant is subject to personal jurisdiction in a given state only if it has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Plaintiffs recognize these basic standards but ignore how the Federal Circuit has applied them in patent-related declaratory judgment actions. Relevant here, the Federal Circuit has stated that "[a] declaratory judgment claim arises out of the patentee's contacts with the forum state only if those contacts 'relate in some material way to the enforcement or the defense of the patent.'" *Maxchief*, 909 F.3d at 1138 (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008)). Thus, the minimum contacts test "requires some enforcement activity in the forum state by the patentee." *Maxchief*, 909 F.3d at 1138. A letter threatening to bring a patent infringement suit against a plaintiff doing business in the forum state is not, on its own, sufficient activity. *See, e.g., Maxchief*, 909 F.3d at 1139; *Avocent*, 552 F.3d at 1333; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998). Even

17

assuming such a letter qualifies as a minimum contact, the Federal Circuit has explained, "merely sending notice letters of patent infringement does not satisfy the 'fair play and substantial justice' prong of the personal jurisdiction inquiry." *Maxchief*, 909 F.3d at 1139. This is because "principles of fair play 'afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum.'" *Id.* (quoting *Red Wing*, 148 F.3d at 1360-61).

A defendant-patentee's sales activity in the forum state is also insufficient. The Federal Circuit is clear that such activity does "not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability." *Avocent*, 552 F.3d at 1336. Such sales, therefore, "do not constitute such 'other activities' as will support a claim of specific personal jurisdiction over a defendant patentee." *Id.*; *see also Maxchief*, 909 F.3d at 1138 n.2 ("Shipments and sales of patented products by the patent holder are not enforcement activities, and thus do not qualify as relevant minimum contacts.").

Defendants maintain that the infringement complaints they e-mailed to Amazon.com are the relevant patent enforcement activities. Invoking *Red Wing*, *Avocent*, and *Maxchief*, they contend that those e-mails are mere infringement notice letters that cannot, without more, support the exercise of personal jurisdiction. (*See* Defs.' Br. at 10-11.) Defendants also argue that, under Federal Circuit law, their sales activity in Illinois does not give rise to personal jurisdiction. (*See id.* at 11.) Plaintiffs have not responded to this argument or discussed Federal Circuit law at all. In arguing that the court could properly exercise personal jurisdiction over Defendants based solely on Defendants' sales activity in Illinois (*see* Pls.' Opp. at 8-9), Plaintiffs rely on cases in which the claims arose out of those sales, and the courts were not called upon to determine whether the defendants' contacts with the forum state were materially related to patent enforcement activity. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772, 780 (1984) (the defendant circulated thousands of copies of its magazine each month to customers in New Hampshire, and the plaintiff's libel claims arose from that "very activity"); *uBID, Inc. v. GoDaddy*

18

*Grp., Inc.*, 623 F.3d 421, 432 (7th Cir. 2010) ("The claim brought by [the plaintiff] in Illinois arises directly out of [the defendant's] registration of the infringing [Internet] domain names bought by customers it has solicited in Illinois and many other states."); *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 759 (7th Cir. 2010) ("Hemi sold and shipped cigarettes to Illinois residents, and Hemi's actions surrounding those sales triggered Illinois's claims against it."); *see* Defs.' Reply [37] at 9 (distinguishing these cases on the same ground).

Plaintiffs' briefing on personal jurisdiction for purposes of the state-law claims is also inadequate. For these claims, Plaintiffs' minimum contacts analysis focuses only on Defendants' sales and marketing activity in Illinois—but Plaintiffs' state-law claims arise from Defendants' infringement complaints to Amazon, not their sales and marketing activity. (*See* FAC ¶¶ 171, 175, 193, 201, 207, 216, 224, 229.) The only exception—the claim that Defendants engaged in unfair competition by falsely marking their products (*see id*. ¶ 175)—does not make a difference because the court has dismissed that claim.

As noted above, it is Plaintiffs' burden to establish that venue is proper in this district, and their only attempt to satisfy the burden is the argument that the exercise of personal jurisdiction is proper. Because Plaintiffs' briefing on the issue of personal jurisdiction ignores the governing law, that effort falls short. The court concludes that Plaintiffs have not shown that venue properly lies in this district.

Where, as here, a court determines that venue is improper, 28 U.S.C. § 1406(a) provides that the court must either dismiss the case or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Defendants ask the court to transfer this case to the District of Arizona. The court has "broad discretion" in determining whether to do so. *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986); *see also id*. ("Under 1404(a) as under 1406(a), the transferring court need not have personal jurisdiction over the defendants."). It is undisputed that Defendants Michael and Brian Speciale are domiciled in Arizona. Defendant Cozy Comfort is an Arizona corporation with its principal place of business in Arizona, and

Plaintiffs do not dispute Defendants' contention that the District of Arizona has personal jurisdiction over it. (*See* Defs.' Br. at 16.) Accordingly, all Defendants are "residents of" the District of Arizona and venue is proper in that district under Section 1391(b)(1). 28 U.S.C. §§ 1391(b)(1), (c)(1)-(2). Transfer will serve the interests of justice by, among other things, obviating the need to continue litigating the question of whether this court can properly exercise personal jurisdiction over Defendants. Taking that question off the table will likely help the parties resolve Plaintiffs' claims more quickly and will conserve judicial resources. The court, therefore, transfers this case to the District of Arizona under 28 U.S.C. § 1406(a).

## CONCLUSION

For the foregoing reasons, the court grants in part Defendants' Motion to Dismiss Count IV of Plaintiffs' First Amended Complaint and Transfer this Action to Arizona [30]. Count IV of the FAC is dismissed without prejudice. The remaining claims are transferred to the District of Arizona under 28 U.S.C. § 1406(a). Defendants' requests for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), and for transfer under 28 U.S.C. § 1404(a), are terminated as moot.

ENTER:

Dated: March 24, 2021

_____
REBECCA R. PALLMEYER
United States District Judge